PRESENT:  All the Justices

ROBERT G. MARSHALL, ET AL.

                                        OPINION BY
v.  Record No. 071959        JUSTICE S. BERNARD GOODWYN
                                     February 29, 2008
NORTHERN VIRGINIA TRANSPORTATION
AUTHORITY, ET AL.


BOARD OF SUPERVISORS OF LOUDOUN
COUNTY

v.   Record No. 071979

NORTHERN VIRGINIA TRANSPORTATION
AUTHORITY, ET AL.


              FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                    Benjamin N. A. Kendrick, Judge

     In this appeal, we are asked to consider several

challenges to Chapter 896 of the 2007 Acts of Assembly.  Our

consideration of two particular issues resolves the matters

presented.  Those issues are: (1) whether Chapter 896 violates

Article IV, Section 12 of the Constitution of Virginia ("the

Constitution"); and (2) whether the Constitution prohibits the

General Assembly from delegating its power of taxation to a

political subdivision charged with the responsibility of

addressing regional transportation issues affecting certain

localities of the Commonwealth, when that political

subdivision is not a county, city, town, or regional

government, and is not an elected body.

I. PROCEDURAL HISTORY

On July 13, 2007, the Northern Virginia Transportation Authority ("NVTA") instituted a bond validation proceeding in the Circuit Court of Arlington County under Article 6 of the Public Finance Act of 1991, Code §§ 15.2-2650 through -2658. NVTA requested, among other things, that the circuit court determine the validity of certain bonds that NVTA proposed to issue ("the bonds"), and the constitutionality of certain taxes and fees that NVTA was authorized to impose, under Chapter 896 of the 2007 Acts of Assembly ("Chapter 896"), to finance the bonds.

The Commonwealth, on behalf of the Governor, the Attorney General, and the Speaker of the House of Delegates (collectively, "the Commonwealth"), intervened in the bond validation proceeding as plaintiffs in support of NVTA. The Board of Supervisors of Loudoun County, Virginia ("Loudoun County") filed responsive pleadings as a defendant opposing validation of the bonds. A group of citizens living in the area encompassed by NVTA, Robert G. Marshall, John Berthoud, Richard H. Black, Catherine Ann Marshall, Edmund Charles Miller, Marcia S. Miller, Kristina Rasmussen, Phillip A. Rodokanakis, and Frank W. Smerbeck ("the Marshall Defendants"), also filed a joint answer opposing the validation. Additionally, the Marshall Defendants filed a

counterclaim and moved for summary judgment alleging, in part, that the bonds and Chapter 896, or portions thereof, violate the Constitution.

After conducting a hearing, the circuit court granted NVTA its requested relief, dismissed the remaining counts of the Marshall Defendants' counterclaim, and dismissed the Marshall Defendants' motion for summary judgment. The circuit court held, in relevant part, that the enactment of Chapter 896

> was within the legislative power of the Virginia General Assembly set forth in Article IV of the Constitution of Virginia, and does not violate any Section of that Article, and the NVTA Act, as amended by Chapter 896, and Virginia Code §§ 46.2-755.1, 46.2-755.2, 46.2-1167.1, 58.1-605, 58.1-606, 58.1-802.1, 58.1-2402.1, 58.1-3825.1, as enacted, do not violate any provisions of the Constitution of Virginia; and

> . . . .

> that the regional fees and taxes and all other means provided for payment of the Bonds are valid and legal and meet the requirements of the Constitution of Virginia and all applicable statutes . . . .

The court, in granting the relief prayed for in the complaint, ruled that the bonds are valid and legal. Loudoun County and the Marshall Defendants appeal from the circuit court's judgment.

## II. FACTUAL BACKGROUND

3

In 2002, the General Assembly created NVTA as a political subdivision of the Commonwealth. See Code § 15.2-4830. NVTA encompasses the Counties of Arlington, Fairfax, Loudoun, and Prince William, and the Cities of Alexandria, Fairfax, Falls Church, Manassas, and Manassas Park ("the Northern Virginia localities") which are designated by name in the statute. Code § 15.2-4831. The governing board of NVTA consists of 14 voting members and two non-voting members. See Code § 15.2-4832.

The voting members of NVTA's governing board are the chief elected officers of the governing body for each named county and city, two members of the House of Delegates appointed by the Speaker of the House, one member of the Senate appointed by the Senate Committee on Rules, and two citizens appointed by the Governor, all of whom reside in the nine localities embraced by NVTA. See Code § 15.2-4832. Any chief elected officer of a governing body of a member city or county may name a designee, but each such designee must be "a current elected officer" of the applicable governing body. Id. Decisions of NVTA must be approved by a "super-majority" of the voting members. See Code § 15.2-4834.

NVTA's powers are limited by its enabling legislation to activities pertaining to regional transportation. See Code §§ 15.2-4830, -4838, and -4840. NVTA is empowered, among

4

other things, to prepare a regional transportation plan for the Northern Virginia localities and to construct or acquire transportation facilities that are either specified in the plan or constitute a regional priority. Id. NVTA may issue bonds to finance such projects. See Code §§ 15.2-4839, -4519.

In 2007, both houses of the General Assembly passed and the Governor signed the legislation that became Chapter 896. The title to Chapter 896 states, in part, that the act will amend and reenact numerous provisions of the Code, with all such enactments "relating to transportation."[1] Under various provisions contained in Chapter 896, NVTA has the authority, in its sole discretion, to impose seven regional taxes and fees ("the regional taxes and fees").

The regional taxes and fees NVTA is authorized to impose within the Northern Virginia localities are: an additional annual vehicle license fee (Code § 46.2-755.1); an additional initial vehicle registration fee (Code § 46.2-755.2); an additional vehicle inspection fee (Code § 46.2-1167.1); a local sales and use tax on vehicle repairs (Code §§ 58.1-605(K)(1), -606(H)(1)); a regional congestion relief fee (Code § 58.1-802.1); a local rental car transportation fee (Code

---

[1] A copy of Chapter 896 of the 2007 Acts of Assembly is available for viewing, downloading and printing from the General Assembly's website as of the date of this opinion at

5

§ 58.1-2402.1); and an additional transient occupancy tax (Code § 58.1-3825.1).  For each such tax and fee, the General Assembly specified the subject of taxation and fixed the amount or rate.

The General Assembly designated the revenue raised from imposition of the regional taxes and fees for the sole purpose of financing bonds and providing revenue for transportation projects and purposes in the nine localities embraced by NVTA. Code §§ 15.2-4831, -4838.1.  Chapter 896 also contains a provision directing that should a court of competent jurisdiction hold that any portion of the Chapter is unconstitutional, the remaining portions of the Chapter shall remain in effect.  2007 Acts ch. 896, cl. 23.

After conducting a public hearing, NVTA's governing body voted to impose the regional taxes and fees authorized by Chapter 896, effective January 1, 2008.  The governing body also adopted a resolution authorizing the issuance of bonds of NVTA in a principal amount not to exceed $130 million, to be paid from the pledgeable NVTA revenues, which include revenues from the regional taxes and fees.

III. ANALYSIS

the following Internet URL: http://leg1.state.va.us/cgi-bin/legp504.exe?071+ful+CHAP0896.

We have long recognized the principle that the power of a government to tax its people and their property is essential to government's very existence. Southern Ry. Co. v. Commonwealth, 211 Va. 210, 220, 176 S.E.2d 578, 584 (1970); Chesapeake & Potomac Tel. Co. v. City of Newport News, 196 Va. 627, 638, 85 S.E.2d 345, 351 (1955); City of Fredericksburg v. Sanitary Grocery Co., 168 Va. 57, 64, 190 S.E. 318, 321 (1937); Vaughan v. City of Richmond, 165 Va. 145, 148, 181 S.E. 372, 374 (1935); City of Norfolk v. Chamberlain, 89 Va. (14 Hans.) 196, 226, 16 S.E. 730, 740 (1892). This power to tax, which is inherent in every sovereign state government, is a legislative power that the Constitution vests in the General Assembly. Town of Danville v. Shelton, 76 Va. (1 Hans.) 325, 327-28 (1882); see Chamberlain, 89 Va. (14 Hans.) at 227, 16 S.E. at 739.

Established principles govern our determination whether the General Assembly has adhered to the Constitution in exercising its legislative power. The exercise of that power clearly encompasses the levying of taxes. Every law enacted by the General Assembly carries a strong presumption of validity, and courts are concerned only with the issue whether a legislative enactment has been rendered according to, and within, constitutional requirements. City of Newport News v. Elizabeth City County, 189 Va. 825, 839, 55 S.E.2d 56, 64

7

(1949).  The separate question regarding the wisdom and the propriety of a statute are matters within the province of the legislature.  Id. at 831, 55 S.E.2d at 60.

We will not invalidate a statute unless that statute clearly violates a provision of the United States or Virginia Constitutions.  In re Phillips, 265 Va. 81, 85-86, 574 S.E.2d 270, 272 (2003); City Council of Emporia v. Newsome, 226 Va. 518, 523, 311 S.E.2d 761, 764 (1984).  Here, we are only concerned with the applicable provisions of the Constitution of Virginia.  We give the Constitution a liberal construction in order to sustain the enactment in question, if practicable. Heublein, Inc. v. Department of Alcoholic Beverage Control, 237 Va. 192, 195, 376 S.E.2d 77, 78 (1989).  We also interpret statutes in a manner that avoids a constitutional question whenever possible.  Yamaha Motor Corp. v. Quillian, 264 Va. 656, 665, 571 S.E.2d 122, 126-27 (2002); Virginia Soc'y for Human Life, Inc. v. Caldwell, 256 Va. 151, 156-57, 500 S.E.2d 814, 816-17 (1998).  The party challenging an enactment has the burden of proving that the statute is unconstitutional, and every reasonable doubt regarding the constitutionality of a legislative enactment must be resolved in favor of its validity.  Hess v. Snyder Hunt Corp., 240 Va. 49, 53, 392 S.E.2d 817, 820 (1990).  See Blue Cross of Virginia v. Commonwealth, 221 Va. 349, 358-59, 269 S.E.2d 827, 832-33

8

(1980); see also Phillips, 265 Va. at 85-86, 574 S.E.2d at 272.

An act is unconstitutional if it is expressly prohibited or is prohibited by necessary implication based upon the provisions of the Constitution of Virginia or the United States Constitution. Dean v. Paolicelli, 194 Va. 219, 227, 72 S.E.2d 506, 511 (1952); Kirkpatrick v. Board of Supervisors, 146 Va. 113, 126, 136 S.E. 186, 190 (1926); Albemarle Oil & Gas Co. v. Morris, 138 Va. 1, 7, 121 S.E. 60, 61 (1924); Button v. State Corp. Comm'n, 105 Va. 634, 636, 54 S.E. 769, 769 (1906); Smith v. Commonwealth, 75 Va. (1 Matt.) 904, 907 (1880); see also School Bd. v. Shockley, 160 Va. 405, 413, 168 S.E. 419, 422 (1933). However, when a court, in determining the constitutionality of a statute, departs from the express limitations of the Constitution and relies instead on implied constitutional restrictions, the legislative usurpation must be very clear and palpable to justify the court's holding that an enactment is unconstitutional. Whitlock v. Hawkins, 105 Va. 242, 249, 53 S.E. 401, 403 (1906).

The principle of severability is also applicable to the various provisions of an enactment. The General Assembly expressly has provided that any unconstitutional provisions of an enactment will be severed from its remaining valid provisions, unless the enactment specifically states that its

9

provisions may not be severed or that the provisions must operate in accord with one another.  Code § 1-243; see also 2007 Acts ch. 896, cl. 23.

Applying these principles, we first examine the Marshall Defendants' claim that Chapter 896 violates Article IV, Section 12 of the Constitution.  This Section provides that:

> No law shall embrace more than one object, which shall be expressed in its title.  Nor shall any law be revived or amended with reference to its title, but the act revived or the section amended shall be reenacted and published at length.

The Marshall Defendants argue that Chapter 896 violates this Constitutional provision in two respects: (1) the title of Chapter 896 is not sufficiently inclusive because although that Chapter affects 12 titles of the Code and contains 23 enactment clauses, some of those enactment clauses and Code titles are not referenced in the title to Chapter 896; and (2) Chapter 896 violates the "single object rule" because it contains matters unrelated to transportation.

As examples in support of their second argument, the Marshall Defendants note that Chapter 896 provides for such diverse subjects as funding salaries for certain professors at Virginia Polytechnic Institute and State University ("Virginia Tech"), funding the Virginia Truck and Ornamentals Research Station, mandating impact fees on new development, and dedicating revenues from a statewide tax increase to the

Virginia Agricultural Foundation Fund.  Thus, according to the Marshall Defendants, Chapter 896 combines so many diverse matters in a single act that legislators and the public were likely to have been misled by its title, and that the various elements of Chapter 896 lack a natural and necessary connection to each other.

NVTA points out that the subjects embraced in Chapter 896 are congruous and have a natural connection with, or are germane to, transportation, and that the Marshall Defendants' listing of various items in Chapter 896 that they claim are unrelated to transportation are out of context; NVTA posits how each is germane to or has a connection with transportation.  For example, NVTA points out that the changes to the statutes related to the Virginia Truck and Ornamentals Research Station, salaries for Virginia Tech professors and the Virginia Agricultural Foundation Fund were required because they are partially funded by the fuels tax and it was necessary to conform the existing statutes to reflect the increase in that tax authorized by Chapter 896.

This Court's jurisprudence with respect to Article IV, Section 12 is well established.  "The fact that many things of a diverse nature are authorized or required to be done in the body of the act, though not expressed in its title is not objectionable, if what is authorized by the act is germane to

11

the object expressed in the title, or has a legitimate and natural association therewith, or is congruous therewith, the title is sufficient." Town of Narrows v. Board of Supervisors, 128 Va. 572, 582-83, 105 S.E. 82, 85 (1920). Thus, Article IV, Section 12 requires that subjects encompassed in a statute, but not specified in the statute's title, be congruous, and have a natural connection with, or be germane to, the subject stated in the title. Commonwealth v. Brown, 91 Va. 762, 772, 21 S.E. 357, 360 (1895) (construing former Va. Const. art. V, § 15 (1869)). This mandate, however, does not require that an act's title include an index to each provision of the act. Southern Ry. Co. v. Russell, 133 Va. 292, 298, 112 S.E. 700, 702 (1922) (construing former Va. Const. art. IV, § 52 (1902)).

Acts of the General Assembly enjoy a presumption of constitutionality both as to title and to text. State Bd. of Health v. Chippenham Hosp., Inc., 219 Va. 65, 71, 245 S.E.2d 430, 434 (1978). "[I]f there is doubt as to the sufficiency of the title, the doubt must be resolved in favor of its sufficiency, as courts will not declare an act of the legislature unconstitutional unless it is plainly so." Commonwealth v. Dodson, 176 Va. 281, 305-06, 11 S.E.2d 120, 131 (1940) (citations omitted); accord State Bd. of Health, 219 Va. at 71, 245 S.E.2d at 434. Due to the nature of

12

Article IV, Section 12, the analysis of a particular act must necessarily "stand on its own," and we must look to both the body and to the title of the act under scrutiny to determine whether the act violates the Constitution. State Bd. of Health, 219 Va. at 72, 245 S.E.2d at 434.

The title to Chapter 896 states, in part, that the act will amend and reenact numerous provisions of the Code, with all such enactments "relating to transportation." These and other references in the title adequately describe the subject matter of the body of the act, and the act's provisions are germane to the object expressed in the title. See Town of Narrows, 128 Va. at 582-83, 105 S.E. at 85; Brown, 91 Va. at 772, 21 S.E. at 360.

Our examination of the subjects included in Chapter 896 reveals that those subjects are congruous and have a natural connection with the subject of transportation expressed in the title. The particular statutes and changes to statutes identified by the Marshall Defendants do not lead us to a different conclusion. Some of those changes were required because the matters addressed in the existing statutes were partially funded by taxes related to transportation, and it was necessary to conform those statutes to reflect the increase in taxes authorized by Chapter 896. Other statutes and changes improve or fund transportation or were necessary

13

to implement or modify the effects of the provisions of Chapter 896 on existing transportation statutes. Therefore, we hold that the circuit court correctly determined that Chapter 896 does not violate Article IV, Section 12 of the Constitution.

We next consider the argument of the Marshall Defendants and Loudoun County that Chapter 896 violates other provisions of the Constitution. In essence, the Marshall Defendants and Loudoun County contend that by authorizing NVTA to impose the regional taxes and fees, Chapter 896 effects a constitutionally prohibited delegation of the General Assembly's taxing authority to a political subdivision whose governing board is not elected by the citizens to serve in that capacity.

NVTA and the Commonwealth respond that NVTA's power to impose the regional taxes and fees, as authorized by Chapter 896, does not constitute a "true" delegation of legislative authority because the General Assembly specified the subject of the regional taxes and fees, dictated the amount or rate of the taxes and fees, and mandated that the revenue derived be spent in a certain manner. NVTA and the Commonwealth contend that the General Assembly retains authority and control over the regional taxes and fees, and remains free to amend, repeal, or restrict NVTA's power to impose them. Thus, NVTA

14

and the Commonwealth maintain that the Constitution does not prohibit the General Assembly from authorizing NVTA to impose the regional taxes and fees within the restrictions prescribed in Chapter 896.  We disagree with the arguments advanced by NVTA and the Commonwealth.

Initially, we observe that neither NVTA nor the Commonwealth disputes that the main purpose of the regional taxes and fees, authorized in Chapter 896, is to raise revenue.  We consistently have held that when the primary purpose of an enactment is to raise revenue, the enactment will be considered a tax, regardless of the name attached to the act.  See Tidewater Ass'n of Homebuilders, Inc. v. City of Virginia Beach, 241 Va. 114, 120-21, 400 S.E.2d 523, 527 (1991); County of Loudoun v. Parker, 205 Va. 357, 360-61, 136 S.E.2d 805, 808 (1964); Board of Supervisors v. American Trailer Co., 193 Va. 72, 76, 68 S.E.2d 115, 118-19 (1951). In accordance with this authority, we conclude that each of the regional taxes and fees provided in Chapter 896 constitutes a tax, because they all are designed to produce revenue to be used for the purpose of financing bonds and supplying revenue for transportation purposes in the Northern Virginia localities.  Code §§ 15.2-4838.1(C)(3), -4840(12).  Thus, we must consider whether by those provisions of Chapter 896, the

15

General Assembly has delegated a portion of its taxing authority to NVTA.

The General Assembly has delegated its authority when it enacts a law authorizing another entity to determine whether the law will be imposed.  See Chapel v. Commonwealth, 197 Va. 406, 413-14, 89 S.E.2d 337, 342 (1955); Mumpower v. Housing Auth. of Bristol, 176 Va. 426, 454-55, 11 S.E.2d 732, 743 (1940).  Here, although the General Assembly specified in Chapter 896 the form, substance, and use of the regional taxes and fees, the General Assembly retained no authority to decide whether the regional taxes and fees would be imposed, leaving that decision solely to NVTA.  See Code § 15.2-4840(12). Although the General Assembly can later pass a law to amend or repeal NVTA's authority to impose taxes, this does not negate the fact that the sole discretion to impose the regional taxes and fees presently rests with NVTA.  Therefore, we hold that because the regional taxes and fees specified in Chapter 896 may be imposed in the sole discretion of NVTA, the General Assembly has delegated its taxing authority to NVTA with regard to the imposition of those taxes and fees.

We must now determine whether the General Assembly's delegation of this taxing authority to NVTA violates the Constitution.  The Constitution of Virginia "is not a grant of legislative powers to the General Assembly, but is a

restraining instrument only, and, except as to matters ceded to the federal government, the legislative powers of the General Assembly are without limit." Harrison v. Day, 201 Va. 386, 396, 111 S.E.2d 504, 511 (1959); accord City of Roanoke v. Elliott, 123 Va. 393, 406, 96 S.E. 819, 824 (1918). As we have stated, the General Assembly may enact any law or take any action "not prohibited by express terms, or by necessary implications by the State Constitution or the Constitution of the United States." Kirkpatrick, 146 Va. at 126, 136 S.E. at 190.

In determining the constitutionality of the General Assembly's delegation of taxing authority to NVTA, we consider the explicit language of the Constitution. See Town of South Hill v. Allen, 177 Va. 154, 164-65, 12 S.E.2d 770, 774 (1941). That explicit language demonstrates the special status that the legislative taxing power occupies in the Constitution, and reflects the greater restrictions that the Constitution places on the General Assembly's exercise of the taxing power. The following provisions of the Constitution guide our analysis in this case.

Article I, Section 6 of the Constitution states, in relevant part

> that all men . . . cannot be taxed . . . without their own consent, or that of their representatives duly elected . . . .

17

Article IV, Section 1 of the Constitution provides that:

The legislative power of the Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and House of Delegates.

Article IV, Section 11 of the Constitution states, in

relevant part, that:

No bill which . . . imposes, continues, or revives a tax, shall be passed except by the affirmative vote of a majority of all the members elected to each house, the name of each member voting and how he [or she] voted to be recorded in the journal.

Article IV, Section 14(5) of the Constitution states, in

relevant part, that:

The General Assembly shall not enact any local, special, or private law in the following cases:

. . . .

(5) For the assessment and collection of taxes, except as to animals which the General Assembly may deem dangerous to the farming interests.

Article VII, Section 2 of the Constitution provides, in

relevant part, that:

The General Assembly may also provide by special act for the organization, government, and powers of any county, city, town, or regional government, including such powers of legislation, taxation, and assessment as the General Assembly may determine . . . .

Article VII, Section 7 of the Constitution provides, in

relevant part, that:

18

> No ordinance . . . imposing taxes . . . shall be passed except by a recorded affirmative vote of a majority of all members elected to the governing body.

We view these provisions of the Constitution with special regard for the detailed and explicit oversight that the framers provided regarding the General Assembly's exercise and delegation of its legislative power of taxation. Article I, Section 6 is contained in the Constitution's Bill of Rights, and it prohibits taxation of citizens without their consent or that of their elected representatives.  We observe that Article IV, Section 1 places the legislative power of the Commonwealth in the General Assembly.

However, the people of Virginia approved a Constitution that places restrictions on the General Assembly's exercise of the taxing power.  In fact, greater restrictions are placed on the taxing power than are placed on the exercise of most other types of legislative power.  For example, under Article IV, Section 11, the General Assembly is prohibited from enacting legislation imposing a tax without an affirmative vote of a majority of all members elected to each house.[2]

---

[2] In contrast, most laws that do not involve the taxing, appropriation, or other related powers of the General Assembly may be enacted merely by a majority of those members voting in each house, provided that the majority is comprised of at least two-fifths of the members elected to that house.  See Va. Const. art. IV, § 11(d).

The General Assembly is directly prohibited from enacting "any local, special, or private law . . . [f]or the assessment and collection of taxes." Va. Const. art. IV, § 14(5). There is, however, an exception to this specific prohibition. The General Assembly may by special act delegate the power of taxation to any county, city, town, or regional government. See Va. Const. art. VII, § 2. NVTA is not a county, city, town, or regional government, and thus it is not a political subdivision to which the General Assembly may constitutionally delegate its legislative taxing authority pursuant to Article VII, Section 2.[3] Instead, NVTA is a political subdivision narrowly charged by the General Assembly with the responsibility of addressing certain regional transportation issues in the Northern Virginia localities it encompasses. See Code §§ 15.2-4830, -4838, and -4840. Furthermore, exercise of the delegation of taxing authority by a county, city, or town is restricted in that an ordinance or resolution imposing taxes may not be passed except by recorded

---

[3] The Marshall Defendants and Loudoun County did not argue before the circuit court that Chapter 896 is a local or special law that violates the provisions of Article IV, Section 14(5), prohibiting the General Assembly from enacting any local, special, or private law for the assessment and collection of taxes. Thus, the question whether Chapter 896 is such a local or special law, and the resulting impact of Article IV, Section 14(5) and Article VII, Section 2, is not before us in these appeals. See Rule 5:25.

20

affirmative vote of a majority of all members elected to the governing body.  See Va. Const. art. VII, § 7.

Upon review of the constitutional provisions set forth above, we conclude that the Constitution, in keeping with rights enumerated in Article I, Section 6 of the Constitution's Bill of Rights, clearly contemplates that taxes must be imposed only by a majority of the elected representatives of a legislative body, with the votes cast by the elected representatives being duly recorded.  The constraints that the citizens of Virginia have placed upon the General Assembly regarding the imposition of taxes would be rendered meaningless if the General Assembly were permitted to avoid compliance with these constraints by delegating to NVTA the decisional authority whether to impose taxes.  Thus, although the Constitution does not explicitly prohibit the delegation of such decisional authority concerning the imposition of taxes, that delegation is prohibited by necessary implication, and the General Assembly may not delegate its taxing power to a non-elected body such as NVTA. See Shockley, 160 Va. at 415, 168 S.E. at 423.

The General Assembly also may not accomplish through Chapter 896, indirectly, that which it is not empowered to do directly, namely, impose taxes on the citizenry in the absence of an affirmative, recorded vote of a majority of all members

21

elected to each body of the General Assembly.  Thus, by enacting Chapter 896, the General Assembly has failed to adhere to the mandates of accountability and transparency that the Constitution requires when the General Assembly exercises the legislative taxing authority permitted by the Constitution.

If payment of the regional taxes and fees is to be required by a general law, it is the prerogative and the function of the General Assembly, as provided by Article IV, Section 1 of the Constitution, to make that decision, in a manner which complies with the requirements of Article IV, Section 11 of the Constitution.  Accordingly, we hold that the provisions of Chapter 896 permitting NVTA to impose the regional taxes and fees are invalid because they violate the Constitution.  See, e.g., Commonwealth v. City of Newport News, 158 Va. 521, 545-46, 164 S.E. 689, 696 (1932).  Therefore, such taxes and fees that NVTA has already imposed are null and void.

We further hold that the circuit court erred in validating the proposed bonds, which rely on the funding mechanism of the regional taxes and fees.  Because Chapter 896 specifically provides for the severance of any provisions in the act that are determined to be unconstitutional, the

22

invalid portions of Chapter 896 are hereby severed from the remainder of the act.[4]  <u>See</u> Code § 1-243.

For these reasons, we will affirm in part, and reverse in part, the circuit court's judgment, and enter final judgment in accordance with our stated holdings.

<u>Affirmed in part</u>,
<u>reversed in part</u>,
<u>and final judgment</u>.

---

[4] Based on these holdings, we need not address the remaining assignments of error.