PRESENT:  All the Justices

MICHAEL W. COVEL, ET AL.
                                        OPINION BY
v.    Record No. 091343        JUSTICE WILLIAM C. MIMS
                                        June 10, 2010
TOWN OF VIENNA

                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Stanley P. Klein, Judge

        In this appeal we consider the validity of Vienna Town

Code ("VTC") §§ 18-258 to -280 (the "Historic Districts

Ordinance") and §§ 18-280.1 to -280.13 (the "WHHD Ordinance"),

which create the Windover Heights Historic District (the

"WHHD").  We also consider an appeal from the denial of a

certificate of appropriateness under the WHHD Ordinance.

            I.    BACKGROUND AND MATERIAL PROCEEDINGS BELOW

        The circuit court decided this case after a bench trial;

consequently, we state the facts in the light most favorable to

the Town of Vienna, the prevailing party below.  Virginia Home

for Boys & Girls v. Phillips, 279 Va. 279, 282, 688 S.E.2d 284,

285 (2010).

        This appeal arises from three consolidated cases involving

six parcels of land in the WHHD.  Michael Covel ("Michael")

owns two adjoining parcels, 130 Pleasant Street, N.W. and 346

Windover Avenue, N.W.  Jerome and Johanna Covel own two

parcels, 224 Walnut Lane, N.W. and 222 Lovers Lane, N.W.

Matthew and Susan Stich own 200 Walnut Lane, N.W.[1]  PMY

Associates ("PMY") owns 210 Lawyers Road, N.W.

## A.  CASE NO. CH-2003-184618

In February 2003, Michael applied to the Windover Heights Board of Review for a certificate of appropriateness ("COA") to erect a fence on his parcels.  His application stated his name, address, and telephone number, and the date.  It incorporated a plat of the fence.  Michael did not respond to any other questions on the application form, including those requesting a list of adjacent properties; proposed materials, colors, and finishes of the fence; and proposed landscaping changes, if any.  The application omitted required dimensional plans showing existing and proposed buildings, structures, fences, or signs on the parcels and photographs of the proposed fence location.

The board of review considered Michael's COA application initially.  At the board's hearing, he declined to supplement the information provided.  The board then rejected his application as incomplete and informed him "more information is need[ed] to review for the application [but] that the Board has no objection to the building of a fence."

---

[1] We refer to Michael Covel, Jerome and Johanna Covel, and Matthew and Susan Stich collectively as "the Landowners."

2

Michael appealed to the town council. He again declined to provide additional information. Following a hearing the council denied his application.

Michael then appealed to the circuit court. He challenged the denial of his COA application and sought a declaratory judgment that (a) the WHHD Ordinance was unconstitutionally vague, (b) the Historic Districts Ordinance was enacted in violation of Code § 15.2-2306, and (c) the WHHD Ordinance was enacted in violation of VTC § 18-261.[2] The Town demurred and the circuit court ruled that the WHHD Ordinance was not unconstitutionally vague on its face. There is no transcript of the circuit court's hearing in the record and Michael did not note any objection to the ruling on the order. No further proceedings relevant to this appeal were conducted prior to consolidation.

### B. CASE NO. CH-2003-186629

In January 2003, before he applied for the COA, Michael requested that his Pleasant Street parcel be withdrawn from the WHHD. While Michael's COA application was pending before the board of review and his request to remove his Pleasant Street

---

[2] Michael brought additional claims under the due process provisions of the Virginia Constitution, the due process and equal protection provisions of the 14th Amendment to the United States Constitution, and 42 U.S.C. § 1983. All these claims were either dismissed or non-suited and are not before us in this appeal.

parcel from the WHHD was pending before the town council, the Landowners simultaneously requested that the other parcels they owned also be removed from the WHHD.  The town council denied all these requests.

Thereafter the Landowners jointly filed a pleading in the circuit court in which they appealed from the denial of their requests to withdraw their parcels from the WHHD and sought declaratory judgment that the ordinances were invalid on the grounds Michael had asserted.[3]  No further proceedings relevant to this appeal were conducted prior to consolidation.

### C.  CASE NO. CL-2006-7105

In November 2005, while both Case Nos. CH-2003-184618 and CH-2003-186629 were pending before the circuit court, PMY requested that its parcel be removed from the WHHD.  The town council denied that request, whereupon PMY appealed to the circuit court.  Although the grounds for appeal were substantially identical to Case Nos. CH-2003-184618 and CH-2003-186629, PMY did not seek declaratory relief challenging the validity of the ordinances.  No proceedings relevant to this appeal were entered prior to consolidation.

---

[3] The claims dismissed or non-suited in Case No. CH-2003-184618 were also either dismissed or non-suited in this case.

4

## D.  THE CONSOLIDATED PROCEEDING

In January 2008 the circuit court entered an order consolidating the cases with the agreement of the parties. That order expressly incorporated into the consolidated proceeding the court's earlier ruling in Case No. CH-2003-184618 that the WHHD Ordinance was not unconstitutionally vague on its face.  Neither the Landowners nor PMY noted any objection to the ruling on the order.  After a three-day bench trial in October 2008, the circuit court entered a final order dismissing all the appeals and denying the Landowners declaratory relief.  We awarded the Landowners and PMY this appeal.

## II. ANALYSIS

### A.  APPEALS FROM THE DENIAL OF MICHAEL'S COA AND THE LANDOWNERS' AND PMY'S REQUESTS FOR REMOVAL OF THEIR PARCELS FROM THE WHHD

Our review of the decision of a governing body relating to a historic district is limited by statute to "whether that decision is 'arbitrary and constitutes an abuse of discretion,' or 'is contrary to law.' "  Norton v. City of Danville, 268 Va. 402, 407, 602 S.E.2d 126, 129 (2004) (quoting Code § 15.2-2306(A)(3)).  The decision of the governing body is presumed to be correct.  Id. at 408, 602 S.E.2d at 129-30.  The party challenging the decision has the burden of proving "it is clearly unreasonable, arbitrary or capricious, and that it

5

bears no reasonable or substantial relation to the public health, safety, morals, or general welfare."  Id. at 409, 602 S.E.2d at 130 (quotation marks omitted).

> Where presumptive reasonableness is challenged by probative evidence of unreasonableness, the challenge must be met by some evidence of reasonableness.  If evidence of reasonableness is sufficient to make the question fairly debatable, the ordinance "must be sustained".  If not, the evidence of unreasonableness defeats the presumption of reasonableness and the ordinance cannot be sustained.

Id. (quoting Board of Supervisors v. Snell Constr. Corp., 214 Va. 655, 659, 202 S.E.2d 889, 893 (1974)).  An issue is "fairly debatable when the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions."  Id. (quoting Board of Supervisors v. Williams, 216 Va. 49, 58, 216 S.E.2d 33, 40 (1975)).

On appeal, neither the Landowners nor PMY point to any evidence in the record to rebut the presumption of validity. Rather, they assert that the Town's decision to deny Michael's COA application and their requests to remove their parcels from the WHHD are unreasonable, arbitrary, or capricious solely because the underlying ordinances are invalid.  We previously have held that we may not consider whether the underlying ordinance is invalid when considering an appeal from a governing board's denial of a COA.  Norton, 268 Va. at 407-08, 602 S.E.2d at 129 ("Norton's challenge to the underlying

6

ordinance . . . is barred from consideration in judicial review of the city council's action concerning the certificate of appropriateness.").  The appropriate method for such challenges is by an action against the governing body.  Id. at 408 n.4, 602 S.E.2d at 129 n.4 (citing Board of Zoning Appeals v. University Square Assocs., 246 Va. 290, 295 n.2, 435 S.E.2d 385, 388 n.2 (1993)).

Accordingly, we find no error in the judgment of the circuit court approving the Town's denial of Michael's COA and the requests to remove parcels from the WHHD.  We now turn to the Landowners' appeal from the dismissal of their claims for declaratory relief.[4]

### B.  THE ENACTMENT OF THE HISTORIC DISTRICTS AND WHHD ORDINANCES

Whether an ordinance has been enacted lawfully is a question of law we review de novo.  Marble Techs., Inc. v. City of Hampton, 279 Va. 409, 416 & n.9, 690 S.E.2d 84, 87 & n.9 (2010).

The Landowners assert that the Historic Districts Ordinance is invalid because it exceeds the authority delegated by the General Assembly, specifically because it refers only to an "area" rather than buildings or structures.  They argue that the authorizing statute at the time the Town adopted the

---

[4] This disposition is complete as to PMY because it did not raise any claims for declaratory relief.

ordinance, former Code § 15.1-503.2,[5] allowed a locality to enact a historic district ordinance only if it set forth a historic landmark established by the Virginia Historic Landmarks Commission or some other building or structure with historic, architectural, or cultural significance. We disagree.

"[C]ourts apply the plain meaning of a statute unless the terms are ambiguous or applying the plain language would lead to an absurd result." Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 926 (2006) (citation omitted). A statute is ambiguous "if the text can be understood in more than one way or refers to two or more things simultaneously or when the language is difficult to comprehend, is of doubtful import, or lacks clearness or definiteness." Id. at 227 n.8, 623 S.E.2d at 926 n.8 (citation, internal quotation marks, and alterations omitted). An absurd result describes "situations in which the law would be internally inconsistent or otherwise incapable of operation." Id. at 227 n.9, 623 S.E.2d at 926 n.9 (quotation marks omitted). When statutory language is unambiguous and does not lead to absurd results, "courts may not interpret the language in a way that effectively holds that the General

---

[5] This statute was amended and subsequently reenacted as current Code § 15.2-2306. See 1997 Acts ch. 587, 676.

8

Assembly did not mean what it actually expressed." Hicks v.

Mellis, 275 Va. 213, 218, 657 S.E.2d 142, 144 (2008).

The Landowners do not challenge the Historic Districts

Ordinance as it first was enacted in 1975. Rather, they

challenge the ordinance as it existed when the WHHD Ordinance

was enacted in April 1979. At that time the authorizing

statute provided:

> The governing body of any county or municipality
> may adopt an ordinance setting forth the
> historic landmarks within the county or
> municipality as established by the Virginia
> Historic Landmarks Commission, and any other
> buildings or structures within the county or
> municipality having an important historic,
> architectural or cultural interest, and any
> historic areas within the county or municipality
> as defined by § 15.1-430(b) of the Code of
> Virginia, amending the existing zoning ordinance
> and delineating one or more historic districts
> adjacent to such landmarks, buildings and
> structures, or encompassing such historic areas;
> provided, that such amendment of the zoning
> ordinance and the establishment of such district
> or districts shall be in accordance with the
> provisions of article 8 (§ 15.1-486 et seq.),
> chapter 11, of Title 15.1 of the Code of
> Virginia. The governing body may provide for an
> architectural review board to administer such
> ordinance. Such ordinance may include a
> provision that no building or structure,
> including signs, shall be erected,
> reconstructed, altered or restored within any
> such historic district unless the same is
> approved by the architectural review board or,
> on appeal, by the governing body of such county
> or municipality as being architecturally
> compatible with the historic landmarks,
> buildings or structures therein.

Former Code § 15.1-503.2(a) (Supp. 1978).  Former Code § 15.1-430(b), referenced therein, defined "[h]istoric area" to mean "an area containing buildings or places in which historic events occurred or having special public value because of notable architectural or other features relating to the cultural or artistic heritage of the community, of such significance as to warrant conservation and preservation." Former Code § 15.1-430(b) (Supp. 1978).

Considered together, these sections authorized a locality to create a historic district even if it contained no buildings or structures.  While former Code § 15.1-503.2(a) is conjunctive by allowing the governing body to adopt an ordinance setting forth "the historic landmarks within the county or municipality as established by the Virginia Historic Landmarks Commission, and any other buildings or structures within the county or municipality having an important historic, architectural or cultural interest, and any historic areas within the county or municipality as defined by § 15.1-430(b)," the relevant language for this case is disjunctive.  It permits the governing body to "delineat[e] one or more historic districts adjacent to such landmarks, buildings and structures, or encompassing such historic areas."  Former Code § 15.1-503.2(a) (Supp. 1978) (emphasis added).  Former Code § 15.1-430(b) likewise is disjunctive:  a historic area may contain

10

"buildings or places."  Code § 15.1-430(b) (Supp. 1978) (emphasis added).

The differentiation in former Code § 15.1-503.2(a) between historic districts adjacent to landmarks, buildings, and structures and districts encompassing historic areas, together with the language in former Code § 15.1-430(b) including areas that do not contain buildings in the definition of historic areas, evidences clear intent by the General Assembly to permit localities to create historic districts without landmarks, buildings, or structures.  Accordingly, the Landowners' argument that the Historic Districts Ordinance is invalid because it does not identify existing landmarks, buildings, or structures fails.

The Landowners also assert that the WHHD Ordinance is invalid because it was not enacted in the manner set forth by VTC § 18-261.  That section requires the planning commission to prepare a detailed report prior to the creation of a historic district.  The Town responds that the requirements of VTC § 18-261 did not apply to the enactment of the WHHD Ordinance.  We disagree.  By its terms, VTC § 18-261 governs amendments to the Historic Districts Ordinance, "including the establishment of historic districts."  Moreover, the enacting clause of the WHHD Ordinance states that the Historic Districts Ordinance is "amended by adding Section 18-280.1."

11

The Town argues alternatively that the WHHD Ordinance is saved by Code § 15.2-1427(C).  The Town contends this statute cures any non-constitutional defect in the enactment of an existing ordinance.  The Landowners respond that the statute cannot save the WHHD Ordinance because VTC § 18-261 imposes specific prerequisites to the creation of a historic district.  Therefore, they argue, the general terms of Code § 15.2-1427(C) must give way.  The Landowners also suggest that applying Code § 15.2-1427(C) to save the WHHD Ordinance would conflict with our decision in Gas Mart Corp. v. Board of Supervisors, 269 Va. 334, 611 S.E.2d 340 (2005).

Code § 15.2-1427(C) provides that "[a]ll ordinances or resolutions heretofore adopted by a governing body shall be deemed to have been validly adopted, unless some provision of the Constitution of Virginia or the Constitution of the United States has been violated in such adoption."  The statute was reenacted in its present form in 2000.  2000 Acts ch. 895.  By its unambiguous terms, it bars all non-constitutional challenges to the adoption of ordinances existing at that time. Thus, regardless of how specific VTC § 18-261's requirements may have been when the Town enacted the WHHD, the Landowners cannot challenge that enactment today.

The Landowners' reliance on Code § 15.2-2315 and Gas Mart is unavailing.  Code § 15.2-2315 does not limit the effect of Code § 15.2-1427(C).  Code § 15.2-2315 provides that:

> Whenever the regulations made under authority of this article require a greater width or size of yards, courts or other open spaces, require a lower height of building or less number of stories, require a greater percentage of lot to be left unoccupied or impose other higher standards than are required in any other statute or local ordinance or regulation, the provisions of the regulations made under authority of this article shall govern. Whenever the provisions of any other statute or local ordinance or regulation require a greater width or size of yards, courts or other open spaces, require a lower height of building or a less number of stories, require a greater percentage of lot to be left unoccupied or impose other higher standards than are required by the regulations made under authority of this article, the provisions of such statute or local ordinance or regulation shall govern.

The Landowners argue that the words "other higher standards" embrace the higher standards imposed by VTC § 18-261 for the enactment of the WHHD Ordinance.  However, the context does not support this interpretation.  "When general words and specific words are grouped together, the general words are limited and qualified by the specific words and will be construed to embrace only objects similar in nature to those objects identified by the specific words."  Andrews v. Ring, 266 Va. 311, 319, 585 S.E.2d 780, 784 (2003).  Each of the terms associated with "higher standards" refers to sizes,

13

heights, or percentages.  These terms do not include the prerequisites for enacting an ordinance, such as the completion of reports.  Accordingly, Code § 15.2-2315 is not applicable.

Similarly, Gas Mart is distinguishable.  In that case we compared the general requirements for enacting ordinances set forth in Code § 15.2-1427(F) with the specific requirements for enacting zoning ordinances set forth in Code §§ 15.2-2204 and 15.2-2285.  We applied the familiar principle of statutory interpretation that "when one statute speaks to a subject generally and another deals with an element of that subject specifically, the statutes will be harmonized, if possible, and if they conflict, the more specific statute prevails."  269 Va. at 350, 611 S.E.2d at 348.

Unlike Gas Mart, this case does not require us to harmonize two conflicting statutes of equal dignity.  This case involves Code § 15.2-1427(C), a statute curing non-compliance with procedural requirements in the enactment of ordinances, and VTC § 18-261, an ordinance setting forth such procedural requirements.  It is well settled that when a statute and an ordinance conflict, the statute must prevail.  Code § 1-248; City Council of Alexandria v. Potomac Greens Assocs. P'ship, 245 Va. 371, 378, 429 S.E.2d 225, 228 (1993) (citing City of Norfolk v. Tiny House, Inc., 222 Va. 414, 421, 281 S.E.2d 836, 840 (1981)); King v. Arlington County, 195 Va. 1084, 1090, 81

14

S.E.2d 587, 591 (1954).  Gas Mart applies when a conflict

arises between two statutes.  It does not apply when the

conflict arises between a statute and an ordinance.

Accordingly, there is no error in the judgment of the

circuit court upholding the ordinances as validly enacted.

C.  THE VAGUENESS CHALLENGE TO THE WHHD ORDINANCE

The scope of the Landowners' argument on this issue is

limited by the procedural posture of their appeal.  While they

argue the WHHD Ordinance is unconstitutionally vague both

facially and as applied, the circuit court dismissed Michael's

facial challenge and subsequently dismissed the Landowners'

challenge in the consolidation order by incorporating its

ruling on Michael's facial challenge.[6]  Neither Michael

individually nor the Landowners collectively preserved any

objection.[7]  Consequently, we will not consider their facial

challenge on appeal.  Rule 5:25.

---

[6] Specifically, Michael argued that the WHHD Ordinance was unconstitutionally vague on its face because it "contains no adequate and objective standards, guidelines or other rational criteria for evaluating applications for certificates of appropriateness."  The Landowners' challenge is identical.  The criteria for evaluating an application for a certificate of appropriateness are found in VTC § 18-280.8.  The circuit court expressly held that this section is not unconstitutionally vague on its face.

[7] No objection appears on the face of the relevant orders and the record includes no transcript of the relevant hearings where oral objections may have been stated.  "When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution

15

The circuit court also determined that the Landowners lacked standing to bring an as-applied challenge to the WHHD Ordinance in Case No. CH-2003-186629 because the WHHD Ordinance sets forth standards by which the Town grants or denies COAs and the Landowners did not apply for COAs in that case. The Landowners did not assign error to that ruling so their as-applied challenge in Case No. CH-2003-186629 is waived. Rule 5:17(c); see also Kondaurov v. Kerdasha, 271 Va. 646, 658, 629 S.E.2d 181, 188 (2006) ("[A] legal decision . . . unchallenged in a subsequent appeal when the opportunity to do so existed[] becomes the law of the case . . . and the parties are deemed to have waived the right to challenge that decision at a later time.") Thus, all that remains before us is Michael's as-applied challenge in Case No. CH-2003-184618.

Whether the WHHD Ordinance is unconstitutionally vague is a question of law we review de novo. Volkswagen of Am., Inc. v. Smit, 279 Va. 327, 335, 689 S.E.2d 679, 684 (2010).

> Our review of the ordinance begins with the principle that duly enacted laws are presumed to be constitutional. Marshall v. Northern Virginia Transp. Auth., 275 Va. 419, 427, 657 S.E.2d 71, 75 (2008); In re Phillips, 265 Va. 81, 85, 574 S.E.2d 270, 272 (2003); Yamaha Motor Corp., U.S.A. v. Quillian, 264 Va. 656, 665, 571 S.E.2d 122, 126 (2002); Finn v. Virginia Retirement System, 259 Va. 144, 153, 524 S.E.2d 125, 130 (2000). We are required to resolve any

of appellate issues, [the issues] affected by the omission shall not be considered." Rule 5:11(b).

16

reasonable doubt concerning the
constitutionality of a law in favor of its
validity. In re Phillips, 265 Va. at 85-86, 574
S.E.2d at 272; Finn, 259 Va. at 153, 524 S.E.2d
at 130; Walton v. Commonwealth, 255 Va. 422,
427, 497 S.E.2d 869, 872 (1998). Thus, if a
statute or ordinance can be construed reasonably
in a manner that will render its terms definite
and sufficient, such an interpretation is
required. See INS v. St. Cyr, 533 U.S. 289, 299-
300 (2001); United States v. Harriss, 347 U.S.
612, 618 (1954); Pedersen v. City of Richmond,
219 Va. 1061, 1065, 254 S.E.2d 95, 98 (1979).

Tanner v. City of Va. Beach, 277 Va. 432, 438-39, 674 S.E.2d
848, 852 (2009).

"The constitutional prohibition against vagueness derives
from the requirement of fair notice embodied in the Due Process
Clause" and ensures that a law "be sufficiently precise and
definite to give fair warning" of what it requires. Id. at
439, S.E.2d at 852; accord Volkswagen, 279 Va. at 337, 674
S.E.2d at 852 (a law "may survive a vagueness challenge if the
language . . . makes clear what [it] prohibits and what is
required in order to comply"). Its purpose is to safeguard
against the arbitrary and discriminatory application of the law
when a legislative act permits a subjective interpretation by
those charged with its enforcement. Tanner, 277 Va. at 439,
674 S.E.2d at 852.

The WHHD Ordinance prohibits the erection of a fence
without a COA. VTC § 18-280.4(A)(1). An applicant for a COA
must provide "a house location survey or dimensional drawing of

17

the subject property showing . . . all existing buildings, accessory buildings, structures, fences or signs" and the proposed location of the fence.  VTC § 18-280.7(A).  Michael did not comply with these requirements.  The ordinance also requires the Town to consider the materials used to construct the fence and the similarity of its features with the features of existing "buildings, accessory buildings, structures, fences or signs in the immediate surroundings."  VTC § 18-280.8(A)(3)-(4).  Michael refused to provide the necessary information about his proposed fence for the Town's consideration.[8]

This is not a case where the Town considered Michael's application and applied vague criteria subjectively to arrive at an arbitrary or discriminatory result.  The Town could not have done so because it lacked the required information from Michael to make <u>any</u> decision based on the criteria set forth in VTC § 18-280.8(A).  Rather, the Town made an objective decision that Michael's application was incomplete.

Consequently, we find that insofar as the WHHD Ordinance applied to Michael in Case No. CH-2003-184618, it required him to submit a complete application for the Town's review.  The

---

[8] To the extent that Michael argues the WHHD Ordinance does not set forth the existing buildings, structures, fences or signs the Town "uses as standards for comparison in making the determination with respect to an application for a COA," we find that VTC § 18-280.8(A)(4) sufficiently sets forth the standard as the existing buildings, structures, fences or signs "in the immediate surroundings" within the WHHD.

18

information required by the ordinance to render an application complete is not vague. VTC §§ 18-280.7 and 18-280.8(A) are "sufficiently precise and definite to give fair warning" to Michael of the information he was required to provide. He repeatedly declined to supply this information.

Accordingly, on these facts we find no error in the judgment of the circuit court dismissing Michael's as-applied challenge to the WHHD Ordinance.

### III.  CONCLUSION

For the reasons set forth above, we will affirm the judgment of the circuit court.

<u>Affirmed.</u>