COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, White and Frucci
Argued by videoconference

**PUBLISHED**

JEFFREY REEVES JOYCE, JR.

v.      Record No. 0178-24-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE KIMBERLEY SLAYTON WHITE
NOVEMBER 12, 2024

FROM THE CIRCUIT COURT OF HENRY COUNTY
James R. McGarry, Judge

Brett P. Blobaum, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Melanie D. Edge, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Jeffrey Reeves Joyce, Jr., appeals his felony conviction of uttering a forged bank note, in

violation of Code § 18.2-170.[1]  He argues that the Commonwealth failed to prove that he used a

false or forged bill as those terms are used in the statute.  We agree and reverse his conviction.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."

*Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

---

[1] Joyce did not appeal his misdemeanor conviction of obtaining property by false
pretenses.

In April 2023, Joyce bought a six-pack of beer from a convenience store using movie prop money. Despite the bill feeling "weird" in that it was "thicker" and "lighter" than a regular bill, cashier Thareo McClain accepted it as a $20 note and gave Joyce change. Joyce bought another item with the change and then left the store.

McClain looked at the bill again a few minutes later because of "[t]he way it felt and the way it looked" and realized that it was not real. To the left of Andrew Jackson's smirking face was printed "This note is for motion picture purposes, it is not legal tender." "Motion Picture Purposes" was printed three more times on the front in place of "The United States of America," "Federal Reserve Note," and "Jackson." On the back above the White House was printed "Motion Picture Purposes" and "In Props We Trust" in place of "The United States of America" and "In God We Trust." "Prop Money, Inc." and "propmoney.com" were also printed on the back.[2]

---

[2] The prop bill is shown below:



McClain then called his manager, Janet Garman, to tell her that he had accepted a fake bill. Garman testified that "[t]he color was off and the texture, the feel, it was off." She marked it with a counterfeit pen, showing it not to be genuine money.

Joyce was charged with misdemeanor obtaining money by false pretenses and felony uttering. He moved to strike the uttering charge, arguing that "[t]he bill very plainly on its face is not U.S. currency" and so "[wa]sn't really a counterfeit bill." The trial court overruled the motion and found Joyce guilty of both offenses. The court found that "there's no question that" Joyce used "a false bill" and that "[t]he only thing that could possibly be argued is whether he knew it to be false." The court found that Joyce had the requisite knowledge because the bill was "so obviously fake that no one can believe that it's true." The court reiterated that the bill was "obviously fake" such that "anybody who holds it knows it."[3] The court sentenced Joyce to five years' imprisonment, all suspended, for uttering.[4] Joyce appeals.



[3] The transcript does not definitively state that the trial court held the bill, but the court kept the bill at the bench when it was not being used for questioning.

[4] The trial court sentenced Joyce to 12 months in jail with 11 months suspended for obtaining money by false pretenses.

ANALYSIS

Ordinarily, "[w]hen an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). The relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

When a sufficiency challenge presents a question of statutory interpretation, however, we review that question de novo. *Spratley v. Commonwealth*, 298 Va. 187, 193 (2019). "Where possible, an appellate court analyzing a statute must determine legislative intent 'from the plain meaning of the language used.'" *Street v. Commonwealth*, 75 Va. App. 298, 306 (2022) (quoting *Hillman v. Commonwealth*, 68 Va. App. 585, 592-93 (2018)). "If the legislature's intent is discernable from the plain meaning of the words in the statute, we look no further." *Id.* To the extent a penal statute is ambiguous, we apply the rule of lenity and construe the statute "strictly against the state and favorably to the liberty of the citizen." *Morgan v. Commonwealth*, 301 Va. 476, 483 (2022) (quoting *Sutherland v. Commonwealth*, 109 Va. 834, 835 (1909)).

A person can violate Code § 18.2-170 in three ways. First, they can "forge any coin, note or bill current by law or usage in this Commonwealth or any note or bill of a banking company." Code § 18.2-170(1). Second, they can "fraudulently make any base coin, or a note or bill purporting to be the note or bill of a banking company, when such company does not exist." Code § 18.2-170(2). And finally, they can "utter, or attempt to employ as true, . . . any *such*

false, forged, or base coin, note or bill, knowing it to be so." Code § 18.2-170(3) (emphasis added). As the Commonwealth does not contend that Joyce created the prop bill, there is no argument that he violated subsections (1) or (2). Instead, the Commonwealth argues that he violated subsection (3) by "employ[ing] as true" a bill that resembled the genuine article enough "to deceive the cashier." Joyce counters, as he did below, that the prop bill was not "such false, forged, or base coin, note or bill" referenced in the statute. We agree with Joyce.

"Such" means "[t]hat or those; having just been mentioned." *Such*, *Black's Law Dictionary* (11th ed. 2019). In the context of Code § 18.2-170, subsection (3)'s use of the word "such" plainly refers to the forged or false bills covered in the statute's first two subsections. In other words, a person violates subsection (3) only when he or she attempts to employ as true a bill that would be illegal to "forge" or "fraudulently make" under subsections (1) or (2).

Asserting that "subsection (3) . . . prohibits uttering or attempting to employ as true a 'false . . . coin, note, or bill, knowing it to be so,'" the Commonwealth claims that our conclusion fails to give effect to the word "false" because that word is not used in the first two subsections. But the Commonwealth's quote omits the word "such" entirely. Because "such" must refer to something that has already been mentioned, we construe "such false . . . bill" as referring to the "fraudulent" bill in subsection (2) that purports to be that of a banking company that does not exist.

The prop bill in this case was not a bill that was illegal to make under subsection (1) or (2). A bill falls under subsection (1) if it was "forge[d]" and resembles a bill currently used by the Commonwealth or a bank. Code § 18.2-170(1). The Code does not define "forgery," which is defined at common law as "the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability." *Beshah v. Commonwealth*, 60 Va. App. 161, 169 (2012) (quoting *Fitzgerald v.*

*Commonwealth*, 227 Va. 171, 173 (1984)). A document is forged if it is made or altered with "intent to defraud" and "the resemblance to the genuine instrument is sufficiently close that there is a bare possibility of imposing the instrument on another as genuine." *Muhammad v. Commonwealth*, 13 Va. App. 194, 199 (1991). But "[w]ritings *invalid on their face* are not subjects of forgery." *Terry v. Commonwealth*, 87 Va. 672, 674 (1891) (emphasis added); *see also United States v. Smith*, 318 F.2d 94, 95 (4th Cir. 1963) (reversing a defendant's conviction under the federal counterfeiting statute where the fake bills in his possession were "just too crude to mislead").

Here, the prop bill stated expressly that "it [wa]s not legal tender" on the front and displayed the words "Motion Picture Purposes" four times on the front and once on the back, including three times in large, conspicuous block letters. Thus, the bill was invalid on its face, rendering it not a forgery under Code § 18.2-170(1). *See Terry*, 87 Va. at 674.

We are unpersuaded by the Commonwealth's argument that the bill was a forgery because it "deceiv[ed] the cashier." After all, the trial court found that the prop bill was "so obviously fake that no one [could] believe that it[ was] true" and that "anybody who [held] it [would] know[]" that it was fake. We give those factual findings, which are supported by the evidence, "the highest degree of appellate deference." *Barney*, 302 Va. at 96 (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015)). That McClain initially—and skeptically—accepted the bill before looking at it minutes later and realizing that it was fake does not prove that the bill was made with the intent and ability to deceive. Moreover, the prop bill did not "purport[] to be the note or bill of a banking company" under Code § 18.2-170(2). Rather, it purported to be fake money to be used as a prop in a movie. We conclude that Joyce did not violate Code § 18.2-170(3) because he did not employ a forged or false bill as those terms are used in Code § 18.2-170(1) or (2).

According to the Commonwealth, that conclusion "would result in a 'manifest absurdity'" that "would allow a person to utter or attempt to employ any false or forged bill—no matter how closely it resembled legal tender—so long as the bill was invalid on its face or did not say that it was issued by a banking company." Courts employ the absurdity doctrine only as an exception to the general rule that a statute's plain meaning controls. *Lucas v. Woody*, 287 Va. 354, 360 (2014) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). "[W]e recognize absurdity in only two narrowly defined situations: when 'the law would be internally inconsistent,' and when the law would be 'otherwise incapable of operation.'" *Id.* at 369 (quoting *Covel v. Town of Vienna*, 280 Va. 151, 158 (2010)). Neither situation is present here. Construing subsection (3) to use the same definitions as subsections (1) and (2) promotes rather than undermines the statute's consistency. Nor is the statute "incapable of operation" merely because it does not sweep as broadly as the Commonwealth may wish. Code § 18.2-170 prohibits specific conduct. That this particular statute does not prohibit Joyce's conduct does not mean that such conduct was legal, as demonstrated by his unchallenged conviction of obtaining money by false pretenses under Code § 18.2-178. We see no absurdity in that.

CONCLUSION

Under the statute's plain terms, a defendant violates Code § 18.2-170(3) when he utters a bill that Code § 18.2-170(1) and (2) prohibits the creation of. Because Joyce did not use such a bill, we reverse his uttering conviction.

*Reversed and dismissed.*